27 A.3d 1247 (2011)
422 N.J. Super. 242
Samuel TORTORICE and Lorraine Tortorice, Plaintiffs-Respondents,
v.
Lynne VANARTSDALEN, Defendant-Appellant.
No. A-4260-09T1
Superior Court of New Jersey, Appellate Division.
Argued January 11, 2011.
Decided September 30, 2011.
*1248 Susan A. Lowden argued the cause for appellant.
Michael P. Albano Runnemede, argued the cause for respondent (Ragonese, Albano & Viola, LLC, attorneys; Mr. Albano, on the brief).
Before Judges PARRILLO, YANNOTTI and ESPINOSA.
The opinion of the court was delivered by
ESPINOSA, J.A.D.
This visitation dispute arises between plaintiffs, the child's paternal grandparents, and defendant, the child's maternal grandmother. Because a fit parent has a fundamental right to autonomy in child-rearing decisions, a grandparent who seeks a visitation order must show that visitation is necessary to avoid harm to the child. Defendant argues that because she is the child's "psychological parent," she enjoys the same right to autonomy and consequently, plaintiffs must satisfy an avoidance of harm standard before a visitation order may be entered. We hold that the status of "psychological parent" does not afford defendant such constitutionally mandated autonomy, that a best interest analysis applies to this dispute, and affirm the order granting visitation to plaintiffs.
J.S. ("Jason")[1] was born on July 8, 2005, to C.S. ("Cindy"). From the time he was born, Jason lived primarily with Cindy's mother, defendant Lynne Vanartsdalen ("Lynne"). Cindy suffered from drug abuse and had relapses in May and October 2006. In December 2006, a consent order was entered granting custody of Jason to Lynne until further order of the court.
In December 2006, Cindy's father, J.S. ("John"), and his current wife filed a complaint for custody. In March 2007, while that matter was pending, an order was entered declaring that plaintiffs' son, Samuel ("Sonny") Tortorice, was Jason's natural father. In April 2007, orders were entered granting grandparent visitation time to John and parenting time to Sonny.
The grandparent visitation order provided for John and his wife to have visitation with Jason every other weekend, one on a Saturday from 10:00 a.m. to 8:00 p.m. and including Cindy, and the next visit on a Sunday from 10:00 a.m. to 6:00 p.m. The order stated further that it was subject to modification if either parent requested increased custodial time.
Sonny was granted supervised parenting time. The order specified that plaintiff Lorraine Tortorice supervise the visitation. The first twelve visits would be for one day on alternate weekends and thereafter, Sonny would have one weekend per month from 10:00 a.m. on Saturday until 6:00 p.m. on Sunday. The order further provided that both Cindy and Sonny would be subject to random drug testing.
Sonny regularly exercised his parenting time for approximately six months. After suffering a relapse in October 2007, his visits became sporadic until March 2008, when he stopped having contact with Jason. It is undisputed that defendant permitted plaintiffs to have continuing contact *1249 with Jason although the parties disagree on how much was agreed upon.
In November 2009, plaintiffs filed a motion, and later, a complaint, seeking grandparent visitation. Plaintiff Samuel Tortorice ("Samuel") certified that plaintiffs had arranged with Lynne to see Jason for two and one-half hours every other weekend. He stated that plaintiffs had seen Jason for the past year and that Sonny was not present during those visits. However, Samuel stated that Lynne would not permit them to take Jason to their home in Philadelphia or anywhere outside New Jersey. He asked that visitation be expanded to a weekend visit from Saturday to Sunday, once a month, and one midweek visit from 4:00 p.m. to 8:00 p.m. per week. Samuel represented that Sonny would not be present for any overnight visits and further asked that he and his wife be added as parties to the action because Sonny was not exercising any parenting time with Jason.
Lynne filed a motion to dismiss the complaint. She denied there was a standing agreement limiting plaintiffs to two and one-half hours on alternate weekends and attested to her desire for Jason to have continuing contact with plaintiffs and the rest of Sonny's family, stating she included them in celebrations and activities involving Jason. However, she resisted the entry of an order as an infringement upon her right as Jason's "custodial parent" to "make all decisions concerning [Jason's] health and safety." She asked the court "not to take away [her] ability to juggle [Jason's] schedule so that he can have a normal life, attending school and church activities, sports, birthday parties with friends etc. and still permitting his grandparents time with him."
Lynne argued that she is Jason's psychological parent and as a result, plaintiffs must show that Jason would suffer some sort of identifiable harm if they are denied grandparenting visitation time. See Moriarty v. Bradt, 177 N.J. 84, 101, 827 A.2d 203 (2003); Mizrahi v. Cannon, 375 N.J.Super. 221, 234, 867 A.2d 490 (App. Div.2005). The motion judge agreed that Lynne stood in the place of a psychological parent, having met the criteria articulated in V.C. v. M.J.B., 163 N.J. 200, 748 A.2d 539, cert. denied, 531 U.S. 926, 121 S.Ct. 302, 148 L.Ed.2d 243 (2000). However, the court found the "identifiable harm" standard inapplicable and established a visitation schedule for plaintiffs.
In this appeal, Lynne raises the following issues for our consideration:
POINT I
THE COURT VIOLATED DEFENDANT-APPELLANT'S CONSTITUTIONAL RIGHT AS A PARENT TO RAISE A CHILD AS THE PARENT SEES FIT WITHOUT INTERFERENCE FROM THE COURT
POINT II
DEFENDANT-APPELLANT STANDS IN LOCO PARENTIS, HAVING THE STATUS OF A NATURAL PARENT AND THE CONSTITUTIONAL RIGHT TO RAISE THE CHILD AS SHE SEES FIT.
POINT III
THE COURT'S DECISION IMPROPERLY IDENTIFIES AND FOCUSES THE LEGAL QUESTION BETWEEN THE PARTIES
POINT IV
THE COURT'S IMPOSITION OF AN ORDER FOR GRANDPARENT VISITATION WAS AGAINST THE PARENT'S OBJECTION RESULTING IN THE IMPOSITION OF A WAIVER OF THE PARENT'S CONSTITUTIONAL RIGHTS
POINT V

*1250 THE COURT'S IMPOSITION OF AN ORDER FOR GRANDPARENT VISITATION BASED UPON DEFENDANT APPELLANT'S PRIOR ACQUIESCENCE IN ALLOWING GRANDPARENT VISITATION AND IN ENTERING A CONSENT ORDER TO RESOLVE A CUSTODY COMPLAINT ARE CLEARLY AGAINST PUBLIC POLICY WHICH SUPPORTS THE RESOLUTION OF FAMILY ISSUES WITHOUT THE INTERVENTION OF THE COURT
After carefully considering the record, briefs and argument of counsel, we are satisfied that none of these arguments has merit.
We begin with a review of the principles applicable to the right of a parent to make decisions, both philosophical and mundane, regarding his or her child. "Our law recognizes the family as a bastion of autonomous privacy in which parents, presumed to act in the best interests of their children, are afforded self-determination over how those children are raised." In re D.C., 203 N.J. 545, 551, 4 A.3d 1004 (2010). A parent's right to parental autonomy is recognized as "a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution" that is "rooted in the right to privacy." Moriarty, supra, 177 N.J. at 101, 827 A.2d 203; see also N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 38, 11 A.3d 844 (2011); Watkins v. Nelson, 163 N.J. 235, 245, 748 A.2d 558 (2000); V.C., supra, 163 N.J. at 218, 748 A.2d 539. Therefore, in an action between a fit parent and a third party, a presumption of parental autonomy exists in favor of the parent. See Watkins, supra, 163 N.J. at 244, 748 A.2d 558. Both custody and visitation applications by a third party are subject to the same constitutional protection because both implicate the right to family autonomy and privacy. Moriarty, supra, 177 N.J. at 116, 827 A.2d 203.
N.J.S.A. 9:2-7.1 provides that a grandparent may seek an order for visitation and bears the burden "to prove by a preponderance of the evidence that the granting of visitation is in the best interests of the child." However, that standard encroached upon the fundamental right of parents to make decisions regarding the care, custody and nurturing of their children, a right that allows the State to intrude only as an exercise of parens patriae authority to avoid harm to the child. Moriarty, supra, 177 N.J. at 114-15, 827 A.2d 203. Addressing this conflict, our Supreme Court explained that, by conditioning grandparent visitation upon a "best interests" showing, the Legislature improperly placed the rights of parents and grandparents on an equal footing. The Court stated,
[A] dispute between a fit custodial parent and the child's grandparent is not a contest between equals. We have long recognized that the best interest standard, which is the tiebreaker between fit parents, is inapplicable when a fit parent is in a struggle for custody with a third party.
[Moriarty, supra, 177 N.J. at 116, 827 A.2d 203.]
The Court therefore held that, "in every case in which visitation is denied, the grandparents bear the burden of establishing by a preponderance of the evidence that visitation is necessary to avoid harm to the child." Id. at 117, 827 A.2d 203. However, when the presumption in favor of parental decision making does not apply, "the court should approve a schedule that it finds is in the child's best interest, based on the application of the statutory factors." Ibid.
*1251 In defining the scope of this "fundamental" right, these authorities address the right of the "parent," not one who has assumed a parental role. N.J.S.A. 9:2-13(f) defines "parent" as "a natural parent or parent by previous adoption." This dispute does not concern either of Jason's natural parents, neither of whom has had parental rights terminated. Although Lynne has custody of Jason by a consent order "until further order of the court," she is not a parent as defined by N.J.S.A. 9:2-13(f).
Lynne argues, however, that because she is Jason's "psychological parent," she is entitled to exercise the parental autonomy enjoyed by natural and adoptive parents and, therefore, plaintiffs must meet the "avoidance of harm" standard to obtain an order for visitation. Her argument relies upon an application of the holding in V.C., supra, 163 N.J. at 226-28, 748 A.2d 539, to the facts here. Her reliance is misplaced.
V.C. presented a contest between a natural parent, who enjoyed the presumption of a constitutional right to parental autonomy, and her former domestic partner, who did not. The role played by the former partner in the children's lives was akin to that of a parent. In the contest between natural mother and this third party, the Court found the former partner had attained the status of "psychological parent" and articulated standards to "govern all cases in which a third party asserts psychological parent status as a basis for a custody or visitation action regarding the child of a legal parent, with whom the third party has lived in a familial setting." Id. at 227, 748 A2d 539. The Court identified the following criteria as necessary for the status of psychological parent:
[T]he legal parent must consent to and foster the relationship between the third party and the child; the third party must have lived with the child; the third party must perform parental functions for the child to a significant degree; and most important, a parent-child bond must be forged.
[Id. at 223, 748 A2d 539.]
The consequence in that parent/third party dispute was the parent's loss of an expectation of autonomous privacy in making decisions for her children. The Court instructed, "Once a third party has been determined to be a psychological parent to a child . . . he or she stands in parity with the legal parent." Id. at 227, 748 A2d 539 (emphasis added); see also Moriarty, supra, 177 N.J. at 116 n.3, 827 A2d 203. Under these circumstances, the Court concluded, "It is the child's best interest that is preeminent as it would be if two legal parents were in a conflict over custody and visitation." V.C., supra, 163 N.J. at 227, 748 A2d 539.
Key to Lynne's argument is the premise that the parity created between legal parent and psychological parent invests the psychological parent with the constitutional protections enjoyed by a legal parent as to third parties. Neither the language nor reasoning in V.C. supports that proposition.
Significantly, the leveling of the playing field between legal parent and psychological parent is a function of a constraint upon the legal parent's autonomy due to his or her own volitional acts, rather than an elevation of the psychological parent's status. The Court described the circumstances before it as "the volitional choice of a legal parent to cede a measure of parental authority to a third party," V.C., supra, 163 N.J. at 227, 748 A2d 539, and noted the "critical" nature of the legal parent's cooperation:
The requirement of cooperation by the legal parent is critical because it places *1252 control within his or her hands. That parent has the absolute ability to maintain a zone of autonomous privacy for herself and her child. However, if she wishes to maintain that zone of privacy she cannot invite a third party to function as a parent to her child and cannot cede over to that third party parental authority the exercise of which may create a profound bond with the child.
[Id. at 224, 748 A2d 539.]
It is by virtue of the legal parent's own actions in inviting the third party "into the otherwise inviolable realm of family privacy[,]. . . [that] the legal parent's expectation of autonomous privacy in her relationship with her child is necessarily reduced from that which would have been the case had she never invited the third party into their lives." Id. at 227, 748 A2d 539 (emphasis added).
Moreover, there is nothing in V.C. to support the proposition that the attainment of status of psychological parent in a dispute with a natural parent creates any such elevated right in the psychological parent in disputes with other third parties. To the contrary, in stating that a best interests standard applied to disputes between legal parent and psychological parent, the Court stated that the standard applied to "[c]ustody and visitation issues between them [.]" Id. at 227-28, 748 A2d 539 (emphasis added). Cf. M.F. v. Dep't. of Human Servs., Div. of Family Dev., 395 N.J.Super. 18, 34, 928 A2d 71 (App.Div. 2007) ("Nothing in [V.C.] suggests . . . that psychological parenthood would create a legal relationship with a child, such as a right to joint custody or visitation, without a court order.")
Therefore, assuming Lynne satisfied all the criteria to attain psychological parent status,[2] the result would be a leveled playing field in any custody or visitation dispute she had with Jason's natural parents. They would lose their presumption of parental autonomy by virtue of their own actions in ceding a parental role to her. However, as to other third parties, Lynne does not gain the presumption Jason's natural parents lost to her.
The absence of a constitutionally based presumption of parental autonomy places this dispute in the same context as one in which a third party satisfies the burden of showing the presumption of parental authority does not apply and the parties consequently stand in parity to one another. In Moriarty, the Court instructed that when "the presumption in favor of a fit parent's decision making is overcome, the court must decide the issue of an appropriate visitation schedule based on the child's best interests." 177 N.J. at 115, 827 A2d 203. That standard is therefore applicable here.
We are satisfied that the Family Part judge's resolution of the instant visitation dispute comports with this standard. As noted, Lynne did not contend that visitation was inappropriate for any reason. She attested to her commitment to permitting visitation and including plaintiffs in activities that ensured their continuing roles in Jason's life. In response to Lynne's objection that she did not want to have a schedule imposed upon her, the motion judge noted that Lynne had agreed to such a schedule for Jason's maternal grandfather, John. Recognizing the difficulty in scheduling activities for a child *1253 Jason's age, the judge devised a schedule that afforded plaintiffs eight hours per month, in blocks of time no less than four hours or in one eight-hour day. In addition, the judge permitted plaintiffs to have one weekend in July and one weekend in August with Jason. This was sufficient time for plaintiffs to develop the quality of visitation they requested while reserving some flexibility for the parties. Implicit in the judge's determination was the finding that the visitation schedule she approved was in the child's best interests. We agree.
Affirmed.
NOTES
[1] "Jason," "Cindy" and "John" are fictional names used to protect the privacy of the child.
[2] Although the motion judge found these criteria were satisfied, we note that expert testimony, which was not provided here, is generally required. V.C., supra, 163 N.J. at 227, 748 A.2d 539. Because we do not view Lynne's potential status as psychological parent as relevant to the legal standard applicable to the motion for grandparent visitation, we need not consider whether the proofs were sufficient to establish that status.