# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4699-18T1

D.S.,

  Plaintiff-Appellant,

v.

P.G. and L.S.,

  Defendants-Respondents.

_____

    Submitted September 29, 2020 – Decided January 08, 2021

    Before Judges Messano, Hoffman and Suter.

    On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FD-03-1278-16.

    Maleski, Eisenhut & Zielinski, LLC, attorneys for appellant (Adam M. Eisenhut, of counsel and on the briefs; Neil Brazer, on the briefs).

    Caruso Smith Picini, PC, attorneys for respondent P.G. (Marcia DePolo, on the brief).

PER CURIAM

This appeal concerns a long-running family dispute regarding the custody of B.G.[1] (Bob), the twelve-year-old son of defendants, L.S. (Mom) and P.G. (Dad), and the grandson of plaintiff D.S., Bob's maternal grandmother (MGM). Because we are satisfied the appeal is both interlocutory and now moot, we dismiss the appeal and remand for further proceedings.

## I.

We derive the following facts from the record. In 2013, the Mercer County Family Part entered an order granting defendants joint legal custody of Bob, with Mom designated as the parent of primary residence (PPR). At that time, Dad lived in Texas, and Mom lived in Mercer County with her mother, MGM.

On July 23, 2015, MGM obtained an order requiring defendants to show cause why the court should not grant her custody of Bob, based upon allegations of escalating alcohol abuse by Mom. The court entered an interim order granting MGM physical custody of Bob and requiring that Mom's "parenting time . . . shall be supervised." After the Division of Child Protection and Permanency (the Division) initiated proceedings upon learning of Mom's alcohol abuse, on October 28, 2015,

---

[1] We use initials and pseudonyms to identify the parties and the minor child, in accordance with Rule 1:38-3(d)(3,12 and 13).

A-4699-18T1

the court ordered that MGM, Mom, and Dad "shall temporarily" share joint legal custody of Bob and that MGM "shall have sole physical custody until further notice of the court."

The matter was subsequently transferred to the Burlington County Family Part.[2] On July 13, 2016, the court entered an order providing, "Legal custody of the child shall be shared jointly by all three parties, . . . . Physical custody of the child shall remain with [MGM]." Various orders followed, amending the parenting time and visitation rights of Mom and Dad, but maintaining the same custody arrangement as set forth in the July 13, 2016 order.

In August 2018, Dad filed an emergent application, requesting the court terminate MGM's custody of Bob and grant him residential custody, including permission to relocate Bob to his home in Texas. In response, MGM filed a motion to modify the prior custody order, seeking a new order that would find that she "is a psychological parent of [Bob] and thus has co-equal rights" as Mom and Dad. In January and March 2019, the motion judge held a plenary hearing on the custody issues, including Dad's request for physical custody and permission to relocate, as well as MGM's motion seeking a determination that she had become a psychological parent of Bob. In addition to hearing the

---

[2] The record does not reflect the reason for the venue change.

testimony of the three parties and Mom's sister, the motion judge also personally interviewed Bob.

On April 3, 2019, the motion judge rendered his decision orally and issued an accompanying order. The judge found sufficient changed circumstances to alter the prior custody order and granted joint legal custody to Mom and Dad, with Mom as PPR. Additionally, the judge expressly ruled that MGM had not established she had become a psychological parent of Bob and specifically provided that she no longer shared joint legal custody of Bob. The judge's order provided MGM with visitation "for two consecutive weeks in the summer" and permitted her to "initiate a phone call or other electronic communication on a twice[-]weekly basis[.]" The order further stated that this new custody arrangement would become effective April 27, 2019; in the interim, the order provided Mom "shall have unsupervised parenting time" on the weekend of April 13, 2019.

Before this new custody arrangement went into effect, Mom relapsed in her recovery. As a result, MGM filed an order to show cause, requesting a stay of the April 3 order pending appeal. MGM certified Mom failed to pick up Bob for Mom's parenting time and was now homeless, unemployed, and abusing alcohol again. At a hearing on April 16, Mom was unable to provide the judge with her current address or to adequately explain why she failed to pick up Bob on April 13. The hearing

4

also revealed the Division opened a new investigation, after a caseworker reported that Mom refused to provide an address for a residence assessment and sounded drunk on the phone. At the conclusion of the hearing, the judge ruled:

> Based on the testimony of [Mom], it's clear to the [c]ourt that[,] at the present time, at the very least, she was not able to present to the [c]ourt that she has the ability to take care of the child. I did not hear anything about where the child would stay if she . . . became the parent of primary residence on April 27th, as I had previously ordered.
>
> The fact that [Mom] was not able to give an adequate explanation or adequate testimony with regard to what happened on Saturday, April 13th, with regard to the parenting time that I had ordered[,] causes the [c]ourt great concern, and also her testimony that she presented today was quite disjointed.

The judge then entered an order staying his April 3 order, returning Bob to MGM's custody, and reinstating joint legal custody of Bob among the three parties.

Shortly thereafter, MGM filed a motion for reconsideration of the judge's April 3, 2019 decision. On May 10, 2019, the judge held a hearing on the reconsideration motion and to further address MGM's order to show cause; in the interim, he received relevant records submitted by the Division.

The motion judge ruled the issues generated by MGM 's order to show cause warranted a new plenary hearing. The judge found the other issues raised by MGM

in her motion for reconsideration, regarding the admissibility of evidence and other alleged procedural errors, were rendered moot by his subsequent April 16 order. The judge also denied reconsideration of his previous finding that MGM was not a psychological parent for Bob.

This appeal followed, with MGM challenging the motion judge's adverse finding on the psychological parent issue and his determination to schedule another plenary hearing to further address the issue of Bob's custody. In November 2019, we requested the motion judge to settle the record regarding whether he determined certain pieces of evidence were admissible. On December 19, 2019, the judge responded to our request.[3]

## II.

Appellate review of a trial court's findings in a custody dispute is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-412 (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). Furthermore, appellate courts afford

---

[3] The trial judge issued an order clarifying that he deemed inadmissible against Dad documents describing a 2014 marijuana arrest and a 2010 domestic violence incident. The judge also clarified that he did receive in evidence certain screenshots of texts sent by Mom to MGM in 2012, but noted that he did not "give them much weight with regard to [his] ultimate decision[.]"

"substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters." Id. at 413. "Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility because, having heard the case, and seen and observed the witnesses, the trial court has a better perspective than a reviewing court in evaluating the veracity of witnesses." P.B. v. T.H., 370 N.J. Super. 586, 601 (App. Div. 2004) (citing Pascale v. Pascale, 113 N.J. 20, 33 (1988)). However, appellate courts review issues of law de novo, even those that arise in the context of a custody dispute. R.K. v. F.K., 437 N.J. Super. 58, 61 (App. Div. 2014).

New Jersey's statutory scheme, the United States Constitution, and common sense "afford a fit parent a superior right to custody of his or her child as against third parties." Watkins v. Nelson, 163 N.J. 235, 245 (2000). Thus, "a presumption of custody exists in favor of the parent." Id. at 246. Both parents have an equal right to custody of their child. N.J.S.A. 9:2-4.

To modify a custody order, a party must first make out a prima facie showing of changed circumstances. R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014). If a genuine and substantial dispute over the requested change occurs, the court will order a plenary hearing. Ibid; Rule 5:8-6. The court then considers the best interests

of the child in deciding whether to order a change in custody. R.K., 437 N.J. Super. at 58.

Unlike a child's legal parents, grandparents have no inherent rights to custody of a child. Watkins v. Nelson, 163 N.J. 235, 245 (2000). Likewise, a grandparent or other third party granted custody via court-order does not bestow parental rights upon that third party. Tortorice v. Vanartsdalen, 422 N.J. Super. 242, 251-252 (App. Div. 2011). However, "[t]he right of parents to the care and custody of their children is not absolute." V.C. v. M.J.B., 163 N.J. 200, 218 (2000). While there is a presumption supporting a natural parent's "right to the care, custody, and control of his or her child," this "presumption in favor of the parent will be overcome by 'a showing of gross misconduct, unfitness, neglect, or "exceptional circumstances" affecting the welfare of the child[.]'" K.A.F. v. D.L.M., 437 N.J. Super. 123, 131-132 (App. Div. 2014)(quoting Watkins v. Nelson, 163 N.J. 235, 246 (2000)(alteration in original)). An exceptional circumstance that overrides the presumption favoring the natural parent occurs when a third party has become a child's "psychological parent," i.e. where "a third party has stepped in to assume the role of the legal parent who has been unable or unwilling to undertake the obligations of parenthood." V.C., 163 N.J. at 219 (citing Sorentino v. Family & Children's Soc. of Elizabeth, 72 N.J. 127, 132 (1976)).

A-4699-18T1

In order to be recognized as a psychological parent, the third party must file a petition with the court. Lewis v. Harris, 188 N.J. 415, 450 n. 20 (2006). Upon this petition, and after the court determines a third party is a child's psychological parent, "he or she stands in parity with the legal parent." V.C., 163 N.J. at 227-228 (citing Zack v. Fiebert, 235 N.J. Super. 424, 432 (App. Div. 1989)). On the other hand, a mere court-ordered award of custody to a third party does not grant the custodian parental rights, nor does it terminate an existing parent-child relationship. Further, a custody award does not entitle the third party to enter the constitutionally-protected zone of autonomous privacy that is fundamental to the legal parent-child relationship. Tortorice v. Vanartsdalen, 422 N.J. Super. 242, 251-252 (App. Div. 2011).

A third party establishing exceptional circumstances by proving psychological parentage "may rebut the presumption in favor of a parent seeking custody even if he or she is deemed to be a fit parent." Watkins, 163 N.J. at 247-248. "In such circumstances, the legal parent has created a family with the third party and the child . . . . essentially giving [the child] another parent[.]" V.C., 163 N.J. at 227. Once the court determines a third party is a child's psychological parent, "he or she stands in parity with the legal parent" such that "[c]ustody and visitation issues between them are to be determined on a bests interests [of the child]

9

standard[.]" V.C., 163 N.J. at 227-228 (citing Zack v. Fiebert, 235 N.J. Super. 424, 432 (App. Div. 1989)).

In V.C., our Supreme Court set forth the requirements that must be met in order for a third party to establish psychological parentage. V.C., 163 N.J. at 223. These four elements must be satisfied:

> [1] the legal parent must consent to and foster the relationship between the third party and the child; [2] the third party must have lived with the child; [3] the third party must perform parental functions for the child to a significant degree; and [4] most important, a parent-child bond must be forged.
>
> [Ibid.]

In discussing the fourth element, the Court stated, "What is crucial here is not the amount of time but the nature of the relationship. . . . Generally, that will require expert testimony." Id. at 226-227.

In his April 3, 2019, oral opinion, the motion judge first noted that psychological parentage could only be established by court order, and none of the prior judges who heard issues involving Bob's custody ever deemed MGM to be Bob's psychological parent. Next, the judge noted that in order to establish psychological parentage, expert testimony is generally required. Nevertheless, later during his oral opinion, when discussing MGM's credibility, the judge said:

The [c]ourt will note that she has had a big influence on this child's life. Has been there when her daughter has asked her to be. And if not for the fact that there is no expert testimony with regard to the psychological parent issue, the [c]ourt would look at many of these factors favorably to the plaintiff/maternal grandmother, specifically with regard to fostering a parent-like relationship between the petitioner and the child; and living with the child in the same household; and taking significant responsibility for the child's care, education, and development.

The judge then made adverse findings to MGM regarding the issue of consent, finding Dad never consented to the creation of a parent-child relationship between MGM and Bob. As for Mom, the judge noted "there was a level of consent," but added, "Perhaps that was withdrawn." In denying Mom's motion for reconsideration, the judge restated his finding that MGM failed to prove the consent element necessary to establish her psychological parent claim.

Since Mom did not file a brief on this appeal, Dad is the only respondent. As a result, the only issue that is not moot is whether or not MGM established her psychological parent claim. Even if we were to affirm the motion judge's decision holding that MGM did not establish she was Bob's psychological parent as of April 2019, such a determination would not preclude MGM from asserting this claim again, particularly since Bob has remained in her sole physical custody for an additional twenty months.

11

At the time this appeal was filed, the motion judge had vacated his order of April 3, 2019; as a result, no final order concerning child custody had been entered. A matter is not considered to be final and appealable as of right until all issues as to all parties are resolved. R. 2:2-3(a); Vitanza v. James, 397 N.J. Super. 516, 517-18 (App. Div. 2008); Yuhas v. Mudge, 129 N.J. Super. 207, 209 (App. Div. 1974). Consequently, we conclude that this appeal is interlocutory and should have been pursued by motion for leave to appeal. R. 2:2-4. In addition, we agree with the assessment of the motion judge that "a lot of what the [c]ourt determined . . . after the plenary hearing has been rendered moot by subsequent developments[.]" We therefore dismiss MGM's appeal and remand for further proceedings.

On remand, the Family Part shall hold a case management conference within thirty days. At that time, the trial court shall address any requests for discovery regarding relevant developments since the initial plenary hearing and shall set a date for the new plenary hearing, if necessary. In addition, the court shall also consider the appointment of a guardian ad litem in this case. See R. 5:8A. We note with approval the comment of the motion judge at the June 21, 2019 hearing that he was "inclined to appoint one."

A-4699-18T1

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

13